Juan MUNOZ, on Behalf and as Next Friend of Roberto MARTINEZ, Sylvia Martinez, Ruben Martinez, Individually and Mary Ann Saldivar, Individually, Appellants,

v.

CAMERON COUNTY, Texas and Sheriff Gus Krausse, Appellees.

No. 13–86–032–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 31, 1986.

Richard C. Arroyo, Brownsville, for appellants.

Roger W. Hughes, Harlingen, for appellees.

Before DORSEY, UTTER and BENAVIDES, JJ.

OPINION

DORSEY, Justice.

This is an appeal from a summary judgment. Appellants, surviving children of Eloisa Martinez, brought suit against Cameron County and its Sheriff, Gus Krausse, alleging negligence in failure to execute an

arrest warrant for Roberto G. Martinez and contending that such negligence was the proximate cause of the death of their mother. Appellants argued that, had the arrest been timely executed, Roberto G. Martinez would not have shot and killed Eloisa Martinez.

On October 17, 1980, pursuant to a complaint filed by Eloisa Martinez, an arrest warrant was issued by Justice of the Peace Alex Perez for the arrest of Roberto G. Martinez on the charge of aggravated assault. Sheriff Gus Krausse received the warrant on the same day. On November 6, 1980, the warrant was withdrawn after Mr. Martinez, through his attorney, contacted Justice Perez and agreed to turn himself in to the police. On November 16, 1980, Roberto Martinez shot and killed his wife, Eloisa Martinez.

Appellants brought this suit alleging that Cameron County Sheriff Gus Krausse had a statutory duty to timely execute the arrest warrant under Tex.Rev.Civ.Stat.Ann. art. 6873 (Vernon 1960), that he was within the course and scope of his employment with the county during the pertinent times, and that his negligent failure to arrest Robert G. Martinez proximately caused the death of Eloisa Martinez. Thus, liability of Sheriff Krausse individually and the Cameron County is asserted as a result of Sheriff Krausse's actions.

When reviewing the granting of a motion for summary judgment, we must consider the summary judgment evidence in the light most favorable to the nonmovants and indulge every reasonable inference in their favor. *Wilcox v. St. Mary's University*, 531 S.W.2d 589 (Tex.1975). The movant for summary judgment has the burden to show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).

■ There are two issues present, each demanding a different analysis: (1) liability of the County for the action of the sheriff and (2) liability of the sheriff. Under the doctrine of sovereign immunity, the State and its political subdivisions may not be held liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *State v. Terrell*, 588 S.W.2d 784, 785 (Tex. 1979); *Wade v. Jackson County*, 547 S.W.2d 371, 373 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Cameron County is a political subdivision of the State, and, as such, is vested with immunity from suit. It is therefore necessary, before liability can be imposed on Cameron County, to ascertain whether there has been a waiver of the State's immunity.

■ The Texas Tort Claims Act, Tex.Civ. Prac. & Rems.Code Ann. 101.001–.109 (Vernon 1986), provides for a limited waiver of this immunity:

§ 101.021. Governmental Liability

A government unit in the state is liable for:

(1) Property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if;

(A) the property damage, personal injury, or death arises from the *operation or use of a motor-driven vehicle* or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a *condition or use of tangible personal or real property* if the governmental unit would, were it a private person, be liable to the claimant according to Texas law [emphasis added].

In order for a political subdivision of the State to be held liable, the alleged tortious acts must come within that waiver of immunity. We do not find any allegation or evidence of facts that would bring this case within any waiver of immunity of the tort claims act. Therefore, the summary judgment was properly granted as to Cameron County.

The remaining question is whether the summary judgment was properly granted as to Sheriff Krausse. Two issues need to be analyzed: (1) the existence of a cause of action against the sheriff for failure to

execute a warrant issued by a magistrate and (2) if such a cause of action exists, whether he is immune from suit. As we have determined that no cause of action exists, we do not reach the question of the existence of official immunity for Sheriff Krausse.

The appellant asserts two potential bases for the existence of a cause of action: the common law and statute. No case has been found within this jurisdiction that is directly on point. Courts have held a sheriff liable for failure to levy execution, failure to protect prisoners in jail against other prisoners, false arrest, etc. However, in our review of these cases, we can find no case in which a sheriff or other law enforcement officer has been held liable for personal injury damages for failure to execute a criminal warrant of arrest.

The warrant of arrest in the instant case states as follows:

> THE STATE OF TEXAS to any sheriff, constable, or peace officer of the State of Texas, Greeting:
>
> You are hereby commanded to arrest Robert G. Martinez if found to be in your county and bring him before me, a Justice of the Peace in and for Precinct No. 2, Place No. 1 of Cameron County, Texas, at my office in Bro[Brownsville] Hall of Justice in said County, Immediately, then and there to answer the State of Texas for an offense against the laws of said State, to wit: aggravated assault of which offense he, Robert G. Martinez is accused by the written complaint, under oath, of Eloisa Martinez filed before me. Herein Fail Not, but of this writ make due return, showing how you have executed the same. Witness my official signature this 17th day of October, 1980.
>
> Alex F. Perez, Justice of the Peace Precinct No. 2, Place No. 1, Cameron County Texas

The return of the complaint shows that it came to hand on the 17th day of October, 1980, at 3 o'clock p.m. The return is executed on behalf of the sheriff, Gus O. Krausse, by a deputy. Article 15.01 of the Code of Criminal Procedure provides that a warrant of arrest is a "written order from a magistrate, directed to a peace officer or some other person specially named, commanding him to take the body of the person accused of an offense, to be dealt with according to law." Tex.Code Crim.Proc. Ann. art. 15.01 (Vernon 1977).

Although the cases seem to be divided in our criminal jurisprudence as to the diligence a peace officer is required to expend in making an arrest, e.g., *Shannon v. State*, 681 S.W.2d 142, 145 (Tex.App.— Houston [14th Dist.] 1984), *pet. ref'd*, 693 S.W.2d 390 (Tex.Crim.App.1985); *Richards v. State*, 657 S.W.2d 174, 175 (Tex.App.— Waco 1983, no pet.), under a warrant in order not to invalidate the arrest, it goes without saying that a sheriff has a duty to execute an arrest warrant that comes to his hand, much the same as he has a duty to keep and maintain the peace.

Our inquiry then is whether this duty to timely execute a warrant is owed to a particular person or is owed to the public generally.

The United States Supreme Court in *South v. Maryland,* 59 U.S. (18 How), 396, 15 L.Ed. 433 (1855), determined that under the common law no cause of action existed against a sheriff for failure to keep and maintain the peace. The facts of *South v. Maryland* were that a deputy sheriff accompanied a judgment creditor to levy on certain assets of a judgment debtor. While in the process of levying, they were beset by a number of workman of the judgment debtor and were required to take refuge from them. The judgment creditor, subsequently the plaintiff in the action, paid the mob $1,500.00 to get it to disburse after calling upon the sheriff to dispel the mob. In the creditor's action against the sheriff for failure to keep and maintain the peace by quelling the mob, the Supreme Court. held that the sheriff's duty to keep the peace is one that is owed the public generally and not to a particular litigant.

The rule of *South v. Maryland* has been held applicable in similar situations in other jurisdictions outside the state of Texas, such as a police officer being called upon to stop the commission of an offense by a citizen. Courts have generally held that

the victim of the crime does not have recourse against the individual policeman for failing to take action to prevent or stop the commission of a crime. *Davidson v. City of Westminster*, 649 P.2d 894 (Cal.1982); *Shore v. Town of Stonington*, 444 A.2d 1379 (Conn.1982); *Morgan v. District of Columbia*, 468 A.2d 1306 (D.C.1983); *Porter v. Urbana*, 410 N.E.2d 610 (Ill.App.Ct. 1980); *Crouch v. Hall*, 406 N.E.2d 303 (Ind.Ct.App.1980); *Robertson v. City of Topeka*, 644 P.2d 458 (Kan.1982); *Riss v. City of New York*, 293 N.Y.S.2d 897, 240 N.E.2d 860 (N.Y.1968); *Mentillo v. County of Cayuga*, 150 N.Y.S.2d 97 (N.Y.Sup.Ct. 1956); *Epling v. Cardarelli*, 468 N.E.2d 335 (Ohio Ct.App.1983); *Barratt v. Burlingham*, 492 A.2d 1219 (R.I.1985).

The exceptions to this rule of non-liability appear mainly to be where a special relationship is created between the victim and the agency or officer. *Fair v. United States*, 234 F.2d 288 (5th Cir.1956) (Provost Marshall told victim that he would advise him when threatening killer was released); *Schuster v. City of New York*, 180 N.Y. S.2d 265, 154 N.E.2d 534 (N.Y.1958) (Victim promised protection by city in order for victim to testify).

We believe the rule of *South v. Maryland* applies to the present situation. The purpose of the warrant of arrest is to bring the accused lawbreaker to court to answer for the commission of an alleged offense and is not to prevent future crimes from occurring. *Compare* Tex.Code Crim.Proc. Ann. Chapters 15 and 7 (Vernon 1977 & Supp.1986).[1]

■ In reviewing the summary judgment evidence, we find no evidence that could be construed as creating a special relationship under the above cited cases between the deceased and the magistrate or sheriff. In the absence of a special

relationship, no liability exists at common law. We therefore hold that under the summary judgment evidence before us, there is no material issue of fact that raises the existence of a cause of action under the common law.

Appellants also contend that the liability of a sheriff may be premised upon Tex. Rev.Civ.Stat.Ann. art. 6873 (Vernon 1960), which provides:

Each sheriff shall execute all process and precepts directed to him by legal authority, and make return thereof to the proper court, on or before the day to which the same is returnable; and any sheriff who shall fail to do so, or who shall make a false return on any process or precept shall, for every such offense, be liable to be fined by the court to which such process is returnable, as for a contempt, not exceeding one hundred dollars at the discretion of the court, which fine shall go to the county treasury; and such sheriff shall also be liable to the party injured for all damages he may sustain.

All of the cases that we have located applying Article 6873 have involved the failure of peace officers to execute and serve civil processes, and none of them have applied to a warrant of arrest. E.g., *Henry S. Miller Company v. Evans*, 452 S.W.2d 426 (Tex.1970) (failure to levy execution); *Diversified Insurance Management, Inc. v. Phagan*, 589 S.W.2d 854 (Tex. Civ.App.—Fort Worth 1979, no writ) (failure to levy execution).

The recognition of liability imposed upon a sheriff for failure to execute civil writs is well established in Texas, originating in the statutory enactment of the common-law by an act of the Congress of the Republic in 1836 and applied in *Chevalier v. Rusk*, Dallam 611 (Tex.1844).

---

**1.** The Code of Criminal Procedure provides for two types of arrest warrants: Chapter 15, which commands the officer to take the body of one accused of an offense to be dealt with according to law, and Chapter 7, which is issued when the magistrate is informed that an offense is about to be committed against the person or property of the informant. When an arrest warrant is issued under Chapter 7, the individual is brought before the magistrate and is allowed to post a bond conditioned upon keeping the peace, commonly known as a peace bond. Thus, the purpose of the Chapter 7 arrest warrant is to prevent a crime from occurring in the future, while a warrant issued under Chapter 15 makes one answerable for an offense already committed.

In our search of Texas law we have not found Article 6873 to be applied to any criminal proceeding nor to include the definition of precept to include a criminal warrant.[2] We note that in *Moody v. Rainey,* 355 S.W.2d 217 (Tex.Civ.App.—Amarillo 1962, writ ref'd n.r.e.) an action was brought against a sheriff for failure to make a proper return on a writ of habeas corpus served upon him.

Liability under Article 6873 is predicated upon the sheriff not executing or returning processes and precepts "on or before the day to which the same is returnable." In the instant warrant, we find no date by which it was to be returned. In the absence of such a date, we cannot hold that Article 6873 applies.

■ We hold that Article 6873 does not impose liability upon the sheriff for failure to speedily execute a criminal arrest warrant. By imposing liability for failure to execute civil process, the legislature enacted a rule which had been well established at common law. As there was no similar rule at common law as to the failure of a sheriff to maintain the peace or to execute criminal warrants of arrest, to hold that Article 6873 imposes liability without evidence of legislative intent would be in violation of that time-honored rule of statutory construction that holds, in the absence of clear evidence of legislative intent to the contrary, a statute will not be held in derogation of the common law. *In re Estates of Carrigan,* 517 S.W.2d 817 (Tex.Civ.App. —Tyler 1974, no writ); *Powell v. City of Amarillo,* 57 S.W.2d 233 (Tex.Civ.App.— Amarillo 1933), *modified,* 93 S.W.2d 144 (Tex.Comm'n App.1936, opinion adopted); *Silurian Oil Co. v. White,* 252 S.W. 569 (Tex.Civ.App.—Amarillo 1923, writ ref'd).

We hold that the summary judgment was properly granted by the trial court against the appellants in favor of Gus O. Krausse, the Sheriff of Cameron County, Texas. The judgment of the trial court is affirmed.

BENAVIDES, J., not participating.

---

**2.** However, a precept is defined by Black's Law Dictionary 1059 (5th ed. 1979) as:

An order, writ, warrant, or process. An order or direction, emanating from authority, to an officer or body of officers, commanding him or them to do some act within the scope of their powers. An order in writing, sent out by a justice of the peace or other like office, for the bringing of a person or record before him. Precept is not to be confined to civil proceedings, and is not of a more restricted meaning than "process." It includes warrants and processes in criminal as well as civil proceedings.

Similar definitions are found in *Moody v. State,* 201 So.2d 650 (Ala.Ct.App.1967); *Ackermann v. Berriman,* 64 Misc. 165, 114 N.Y.S. 937 (N.Y.City Ct.1908).